T.C. Memo. 2002-144

UNITED STATES TAX COURT

SANDRUS L. COLLIER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1570-01.                    Filed June 10, 2002.

<u>Eric F. Horvitz</u> and <u>Elizabeth A. Keith</u>, for petitioner.

<u>Michele A. Yates</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  This case arises from a request for equita-
ble relief (relief) under section 6015(f)[1] with respect to peti-
tioner's taxable years 1987 through 1991.

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect at all relevant times.  All
Rule references are to the Tax Court Rules of Practice and
Procedure.

The issues remaining for decision are:

(1) Does the Court have jurisdiction over petitioner's request for relief under section 6015(f) for taxable years 1990 and 1991?  We hold that we do.

(2) Did respondent abuse respondent's discretion in denying petitioner relief under section 6015(f) for taxable years 1988, 1989, 1990, and 1991 (years at issue)?[2]  We hold that respondent did not.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Sandrus L. Collier (Ms. Collier), resided in Herndon, Virginia, at the time she filed the petition.

Ms. Collier and Claiborne L. Collier IV (Mr. Collier) married on April 1, 1978, separated in July 1992, and divorced in January 1997.  During their marriage, Ms. Collier and Mr. Collier had one son, Claiborne Lee Collier V, who at the time of the trial in this case was 20 years old.

At all relevant times, Ms. Collier knew that Mr. Collier was the father of at least one other child who was living in California at all relevant times after 1987.  Ms. Collier also was aware at all relevant times that, at least during and before 1987, Mr. Collier had a support obligation with respect to that child and

---

[2]On brief, petitioner concedes that she is not entitled to relief under sec. 6015(f) for taxable year 1987.

that, during a period which is not disclosed by the record but which included at least certain years prior to 1988, Mr. Collier was in arrears with respect to that obligation.

During the period 1987 through 1991, Ms. Collier worked as a teacher with the Fairfax County Public School System, and Mr. Collier worked for one or more banks, for which they received the wages indicated:

| Year | Ms. Collier's Wages | Mr. Collier's Wages |
|------|---------------------|---------------------|
| 1987 | $24,678 | $37,214 |
| 1988 | 25,000 | [1] |
| 1989 | 33,502 | 41,130 |
| 1990 | 32,689 | 41,729 |
| 1991 | 33,000 | 41,793 |

[1]The 1988 joint return is not part of the record, and the record does not disclose the amount of Mr. Collier's wages during 1988.

During the same period, the respective employers of Ms. Collier and Mr. Collier withheld from their respective wages the amounts of Federal income tax (tax) indicated:

| Year | Tax Withheld from Ms. Collier's Wages | Tax Withheld from Mr. Collier's Wages | Total Tax Withheld from Wages of Ms. Collier and Mr. Collier |
|------|----------------------------------------|----------------------------------------|--------------------------------------------------------------|
| 1987 | 0 | $2,967 | $2,967 |
| 1988 | [1] | [1] | 4,171 |
| 1989 | $3,237 | 2,239 | 5,476 |
| 1990 | 2,859 | 2,159 | 5,018 |
| 1991 | [1] | [1] | 4,628 |

[1]The record does not disclose how much, if any, of the total amount of tax withheld for taxable years 1988 and 1991 is attributable to tax withheld from Ms. Collier's wages and how much, if

any, of such tax is attributable to tax withheld from Mr. Collier's wages.

At the time of the trial in this case, Ms. Collier was (1) earning approximately $60,000 a year, (2) enrolled in a postgraduate program, (3) paying for her adult son's college education, and (4) caring for her sick mother.

During periods throughout the years 1987-1991, Ms. Collier and Mr. Collier maintained a joint checking account. At all relevant times, Ms. Collier was responsible for paying at least some of the bills of Mr. Collier and herself. However, Ms. Collier did not always have enough money to pay certain of those bills, and a friend (Christine Stotts) lent her undisclosed amounts of money.

At all relevant times, Ms. Collier and Mr. Collier kept information relating to their financial and tax matters in one place, and they both had access to that information. At times throughout the years 1987-1991, Ms. Collier and Mr. Collier discussed their financial and tax matters.

On April 18, 1989, Ms. Collier and Mr. Collier jointly filed Form 1040, U.S. Individual Income Tax Return (Form 1040), for 1987 (1987 joint return), which they signed on September 20, 1988. In that return, Ms. Collier and Mr. Collier reported total tax of $6,893 and tax due of $3,926. At the time Ms. Collier and Mr. Collier filed the 1987 joint return, Ms. Collier did not believe that payment was made of the $3,926 of tax due shown in

that return, and they did not pay any tax at that time.

On June 12, 1989, respondent assessed $6,893 with respect to the taxable year 1987 of Ms. Collier and Mr. Collier. Respondent applied $2,967 of tax withheld against that assessment, which left $3,926 unpaid.

Sometime after June 12, 1989, and before October 1991, respondent placed a lien on a joint bank account of Ms. Collier and Mr. Collier with respect to the unpaid assessment for their taxable year 1987, and Ms. Collier was aware of that lien. In October 1991, Ms. Collier and Mr. Collier entered into an installment agreement (1991 installment agreement) with respect to that unpaid assessment under which they made payments until June 22, 1992, that respondent applied to that assessment. After June 22, 1992, Ms. Collier ceased making installment payments under the 1991 installment agreement. Mr. Collier continued to make installment payments under the 1991 installment agreement until December 1996, when all payments ceased.

In separate notices dated March 25, 1996, May 12, 1997, May 11, 1998, and April 26, 1999 (April 26, 1999 notice) and addressed to Ms. Collier and Mr. Collier, respondent informed them that respondent had applied Ms. Collier's overpayments of tax for 1995, 1996, 1997, and 1998 in the amounts of $26, $946, $725, and $107, respectively, against the unpaid assessment for 1987. The April 26, 1999 notice indicated that respondent's application of

Ms. Collier's overpayment for 1998 had reduced the unpaid assessment for 1987 to zero dollars.

Ms. Collier and Mr. Collier jointly filed Form 1040 for 1988 (1988 joint return). Ms. Collier and Mr. Collier did not pay any tax at the time they filed the 1988 joint return.

On August 28, 1989, respondent assessed $7,049 with respect to the taxable year 1988 of Ms. Collier and Mr. Collier. Respondent applied $4,171 of tax withheld against that assessment, which left $2,878 unpaid. Ms. Collier and Mr. Collier did not enter into an installment agreement or other arrangement to pay the unpaid assessment for 1988.

In a notice dated April 11, 2000, respondent informed Ms. Collier that respondent had applied Ms. Collier's $443 overpayment for 1998 against the unpaid assessment for 1988. Sometime thereafter, respondent applied a total of $1,165 of Ms. Collier's overpayments for certain other taxable years against the unpaid assessment for 1988.[3]

---

[3]The parties stipulated:

> 27. Petitioner's overpayment in the amount of $865.00 from the 2000 tax year was applied against the outstanding 1988 tax balance.

> 28. Petitioner's overpayment in the amount of $300.00 from the 2000 tax year was applied against the outstanding 1988 tax balance.

We believe that the foregoing stipulations are in error in indicating that both of the overpayments to which they refer

(continued...)

On September 3, 1991, Ms. Collier and Mr. Collier jointly filed Form 1040 for 1989 (1989 joint return), which they signed on August 29, 1991. In that return, Ms. Collier and Mr. Collier reported total tax of $10,952 and tax due of $5,554.[4] At the time Ms. Collier and Mr. Collier filed the 1989 joint return, Ms. Collier did not believe that payment was made of the $5,554 of tax due shown in that return, and they did not pay any tax at that time.

On February 3, 1992, respondent assessed $10,952 with respect to the taxable year 1989 of Ms. Collier and Mr. Collier. Respondent applied $5,476 of tax withheld against that assessment, which left $5,476 unpaid. Ms. Collier and Mr. Collier did not enter into an installment agreement or other arrangement to pay the unpaid assessment for 1989.

Ms. Collier and Mr. Collier jointly filed Form 1040 for 1990 (1990 joint return). Mr. Collier signed that return. Although Ms. Collier did not sign the 1990 joint return, she intended to file that return jointly with Mr. Collier and did not file a separate return for 1990. In the 1990 joint return, Ms. Collier

---

[3](...continued)
pertain to taxable year 2000. The record does not otherwise disclose the year to which each of those overpayments pertains.

[4]There was a mathematical error in the computation of the amount of tax due shown in the 1989 tax return. That return reported total tax of $10,952 and total payments of $5,476. The 1989 joint return incorrectly reported the amount of tax due as $5,554. The difference between $10,952 and $5,476 is $5,476.

and Mr. Collier reported total tax of $10,539 and tax due of $5,521. Ms. Collier and Mr. Collier did not pay any tax at the time they filed the 1990 joint return.

On May 20, 1991, respondent assessed $10,539 with respect to the taxable year 1990 of Ms. Collier and Mr. Collier. Respondent applied $5,018 of tax withheld against that assessment, which left $5,521 unpaid. In November 1997, Mr. Collier entered into an installment agreement (1997 installment agreement) with respect to the unpaid assessment for 1990.[5]

Ms. Collier and Mr. Collier jointly filed Form 1040 for 1991 (1991 joint return). Mr. Collier signed that return. A signature for "Sandrus Collier" appeared under the signature of Mr. Collier in the 1991 joint return. Ms. Collier intended to file that return jointly with Mr. Collier and did not file a separate return for 1991. In the 1991 joint return, Ms. Collier and Mr. Collier reported total tax of $12,778 and tax due of $8,528.[6] At the time Ms. Collier and Mr. Collier filed the 1991 joint return, Ms. Collier did not believe that payment was made of the $8,528 of tax due shown in that return, and they did not pay any tax at

---

[5]The record does not disclose whether Mr. Collier made any payments under the 1997 installment agreement.

[6]There was a mathematical error in the computation of the amount of tax due shown in the 1991 joint return. That return reported total tax of $12,778 and total payments of $4,628. The 1991 joint return incorrectly reported the amount of tax due as $8,528. The difference between $12,778 and $4,628 is $8,150.

that time.

On May 25, 1992, respondent assessed $12,778 with respect to the taxable year 1991 of Ms. Collier and Mr. Collier. Respondent applied $4,628 of tax withheld against that assessment, which left $8,150 unpaid. Ms. Collier and Mr. Collier did not enter into an installment agreement or other arrangement to pay the unpaid assessment for 1991.

On March 16, 1996, Ms. Collier and Mr. Collier signed a document entitled "PROPERTY SETTLEMENT AND SEPARATION AGREEMENT" (separation agreement). That agreement provided in pertinent part:

4.      WAIVER OF SPOUSAL SUPPORT

The parties hereby waive and release any rights that they may have for the support and maintenance, spousal support, or alimony of themselves, and agree that they will at no time hereafter seek or ask, in any manner, any monies of any nature from one another except as set forth in this Agreement; and further, that if proceedings in divorce are taken by either of the parties, they will not in such proceedings make any such demand.

*       *       *       *       *       *       *

16.      DEBTS

Except as otherwise provided herein, each party shall be solely responsible for any and all debts solely in his or her name, and shall indemnify and hold the other party harmless thereon.

The Husband hereby assumes and agrees to pay the joint debt to the IRS in the approximate amount of $22,000.00 incurred by the parties prior to the execution of this Agreement, and shall indemnify and hold the Wife harmless thereon.

The Wife hereby assumes and agrees to pay the joint debt to Apple Federal Credit Union in the approx-imate amount of $10,000.00 incurred by the parties prior to the execution of this Agreement, and shall indemnify and hold the Husband harmless thereon.

In a document entitled "JUDGMENT OF ABSOLUTE DIVORCE" (judgment of divorce), the Circuit Court for Prince George's County, Maryland, ordered, inter alia, "that all the terms and provisions of the Agreement of the parties dated the 16th day of March, 1996 * * * be * * * incorporated, but not merged, into the judgment by reference". On January 2, 1997, that court entered that judgment of divorce.

On April 8, 2000, Ms. Collier sent respondent the then current version of Form 8857, Request for Innocent Spouse Relief (And Separation of Liability and Equitable Relief) (Form 8857), which respondent had instructed her to complete.[7] In that form, Ms. Collier requested relief under section 6015(b), (c), and (f). Ms. Collier attached the following statement to Form 8857:

Dear IRS: Request for Innocent Spouse Relief Division,

I am requesting Innocent Spouse Relief for the FYE 1988. I do not have a refund this year as in previous years. My employer has changed the month of our FYE from July to December. With doing this I managed to break even this year. I am asking for relief from previous years if possible. I know my ex-husband has applied for an offer in compromise. I do not know what the status of our taxes are as he seems to be very secretive about this. I thought he was in good stand-

---

[7]On Oct. 2, 1998, Ms. Collier sent respondent a prior version of Form 8857, in which she requested relief under sec. 6015.

ing and paying as scheduled. Only after receiving a letter indicating a TAX LEVY, was I aware of what was going on.

I am now legally divorced from Claiborne L. Collier, IV, and have been separated from him since 1992. While married to Claiborne he had increased his payroll deductions from 3 to 12 without my knowledge during the years 1988 through 1991. I was not aware of this deduction until after we were divorced and I began cleaning out old files and records. Yes, I am guilty and I feel very foolish as not to have taken a more responsible approach with the filing of our taxes. At the time I had no reason not to trust him with our financial matters, not even knowing what or how much we might get back or owe, he did keep me in the dark. I erred in my judgment with many aspects of our marriage and especially with our finances. I do not have any documentation from his place of employment during those years, nor is his former employer, Equitable Bank of Maryland, in business any longer. I have moved several times as our records were either lost or thrown out. All I have are my own tax records for the years 1992 to the current. I have legal custody of our son and have only claimed him and myself. I now know there are many things I was lead to believe about the marriage and our financial obligations that were now correct.

In 1997, I should have received a $900 federal refund for tax FYE 96. I requested that my refunds not be applied to any back taxes with my former husband. When I did not hear a response, I wrote asking for it to be applied to and accepted as paid-in-full for the Tax period: 12-31-1987. The amount owed for the year 1988 was $818.03. However, it was not credited as paid in full. In 1998, I should have received $725 for FYE 97 again it was applied to our 1987 and 1988 tax year. Again I wrote asking for relief of my taxes and again it was not.

Since 1992, I have lived up to all the IRS required agreements of filing federal taxes on time. As a matter of fact, I've tried in previous years, without success, to not have any of my tax refunds applied to these back taxes. I submitted legal documents and the Form 433-F to the required departments. I think it was either lost or misplaced in your office, because when I called to check the status, after several months of not

hearing a response, various employees didn't quite know how to respond over the phone. The legal documents were copies of our divorce agreement, which includes a section with stipulation Clai would be responsible for paying our tax bills. I mailed copies of our divorce agreement in previous years. I was told by an attorney and by one of your employees, as well as by the judge who signed our divorce agreement, that our divorce settlement is a binding document. I felt it meant this is how the judge expected the agreement to be carried out, that it would be possible for me to be released from being directly responsible for any tax payments. All I'm asking is to be removed from being directly responsible - meaning I would not like to be a part of any <u>Intent to Levy</u> or collection. I have tried to do my part; I have filed on time and tried to do what is expected. I hope this year I will finally be able to be released from these taxes, or that he is able to finally have an off of compromise accepted. I would like to move on in my life without financial obligations connected with him.

I don't have much, but what I do have, I've saved and struggled to acquire on my own. I am now paying for our son's college education on my own. His father is responsible just as I am however; he is not living up to it. I hope you take under consideration the above information. Please advise in writing your decision and inform me on the direction to take to settle the above taxes.

Again Thank you for trying to help settle a problem that has taken a long time to process. If you require additional information please feel free to contact me. If you have a FAX number for me to forward additional material please forward the number. I want to do whatever it takes to help the IRS help me help myself. I put my faith in God and you as an employee of the IRS to help me with a solution. [Reproduced literally.]

On December 19, 2000, respondent sent Ms. Collier a determination letter with respect to the taxable years 1987 through 1991 of Ms. Collier and Mr. Collier. In that letter, respondent determined that Ms. Collier is not entitled for any of those

years to relief under section 6015(f)[8] because: (1) Ms. Collier knew and had reason to know of the underpayment of tax for each of the years 1987 through 1991, and (2) under all the facts and circumstances, it would not be inequitable to hold Ms. Collier liable for the tax for each of those years.

## OPINION

We first address Ms. Collier's position that the Court lacks jurisdiction over her request for relief under section 6015(f) for taxable years 1990 and 1991. In support of that position, Ms. Collier contends that she did not jointly file tax returns with Mr. Collier for those years.

The Court's jurisdiction in the instant case is dependent upon section 6015(e)(1).[9] See Ewing v. Commissioner, 118 T.C.

---

[8] Respondent also denied, and Ms. Collier concedes that she is not entitled to, relief under sec. 6015(b) and (c).

[9] Sec. 6015(e) provides in pertinent part:

SEC. 6015. RELIEF FROM JOINT AND SEVERAL LIABILITY ON JOINT RETURN.

   (e) Petition for Review by Tax Court.--

      (1) In general.--In the case of an individual against whom a deficiency has been asserted and who elects to have subsection (b) or (c) apply--

         (A) In general.--In addition to any other remedy provided by law, the individual may petition the Tax Court (and the Tax Court shall have jurisdiction) to determine the appropriate relief available to the individual under this section if such petition is
                                          (continued...)

__, __ (2002); <u>Fernandez v. Commissioner</u>, 114 T.C. 324, 330-331 (2000); <u>Butler v. Commissioner</u>, 114 T.C. 276, 289-290 (2000). We conclude that the joint filing of a tax return is not a prerequisite to the Court's jurisdiction under that section.[10] We reject Ms. Collier's position that we do not have jurisdiction over taxable years 1990 and 1991 because she did not jointly file tax returns with Mr. Collier for those years.

We next address Ms. Collier's position that respondent should not have denied her request for relief under section 6015(f) with respect to each of the taxable years 1988 through

---

[9](...continued)
          filed--

                (i) at any time after the earlier of--

                   (I) the date the Secretary mails, * * * notice of the Secretary's final determination of relief available to the individual, or

                   (II) the date which is 6 months after the date such election is filed with the Secretary, and

                (ii) not later than the close of the 90th day after the date described in clause (i)(I).

[10]Although our jurisdiction under sec. 6015(e)(1) is not dependent on spouses' jointly filing a tax return, a taxpayer is not entitled to relief under sec. 6015 for a taxable year if such taxpayer did not jointly file a tax return with such taxpayer's spouse for that year. See sec. 6015; Rev. Proc. 2000-15, 2000-1 C.B. 447, 448. We address below Ms. Collier's contention that she did not jointly file tax returns with Mr. Collier for 1990 and 1991.

1991.  We review that denial of relief for abuse of discretion.
Butler v. Commissioner, supra at 291-292.  Ms. Collier bears the
burden of proving that respondent abused respondent's discretion
in denying her relief under section 6015(f).  See Jonson v.
Commissioner, 118 T.C. 106, 125 (2002).

As directed by section 6015(f),[11] respondent has prescribed
procedures in Rev. Proc. 2000-15, 2000-1 C.B. 447 (Revenue
Procedure 2000-15), to be used in determining whether an individ-
ual qualifies for relief under that section.  Section 4.01 of
Revenue Procedure 2000-15 lists seven conditions (threshold
conditions) that must be satisfied before the Internal Revenue
Service (Service) will consider a request for relief under
section 6015(f).[12]  If a requesting spouse satisfies all of the

_____

[11]Sec. 6015(f) provides:

SEC. 6015.  RELIEF FROM JOINT AND SEVERAL LIABILITY ON
            JOINT RETURN

    (f) Equitable relief.–-Under procedures prescribed
by the Secretary, if--

        (1) taking into account all the facts and
    circumstances, it is inequitable to hold the indi-
    vidual liable for any unpaid tax or any deficiency
    (or any portion of either); and

        (2) relief is not available to such individ-
    ual under subsection (b) or (c),

the Secretary may relieve such individual of such
liability.

[12]Rev. Proc. 2000-15, sec. 4.01, 2000-1 C.B. 448, provides:
                                        (continued...)

applicable threshold conditions, section 4.01 of Revenue Procedure 2000-15 provides that that spouse is entitled to relief under section 6015(f) for all or part of the liability in question if, taking into account all of the facts and circumstances,

---

¹²(...continued)

    .01  <u>Eligibility to be considered for equitable relief</u>.  All the following threshold conditions must be satisfied before the Service will consider a request for equitable relief under § 6015(f). * * *

      (1) The requesting spouse filed a joint return for the taxable year for which relief is sought;

      (2) Relief is not available to the requesting spouse under § 6015(b) or 6015(c);

      (3) The requesting spouse applies for relief no later than two years after the date of the Service's first collection activity after July 22, 1998, with respect to the requesting spouse;

      (4) * * * the liability remains unpaid. * * *

      (5) No assets were transferred between the spouses filing the joint return as part of a fraudulent scheme by such spouses;

      (6) There were no disqualified assets transferred to the requesting spouse by the nonrequesting spouse. * * *  For this purpose, the term "disqualified asset" has the meaning given such term by § 6015(c)(4)(B); and

      (7) The requesting spouse did not file the return with fraudulent intent.

A requesting spouse satisfying all the applicable threshold conditions set forth above may be relieved of all or part of the liability under § 6015(f) * * *, if, taking into account all the facts and circumstances, the Service determines that it would be inequitable to hold the requesting spouse liable for such liability.

the Service determines that it would be inequitable to hold the requesting spouse liable for such liability.

Turning to the threshold conditions of section 4.01 of Revenue Procedure 2000-15, the parties agree or do not dispute that Ms. Collier satisfies all of those conditions for each of the taxable years 1988 through 1991 except Ms. Collier apparently contends that she does not satisfy for taxable year 1990 or taxable year 1991 the threshold condition set forth in section 4.01(1) of Revenue Procedure 2000-15 (i.e., the requesting spouse jointly filed with the nonrequesting spouse a tax return for the taxable year for which the requesting spouse is seeking relief under section 6015(f)).[13]

_____

[13]Ms. Collier assumes incorrectly that if the Court were to conclude that it has jurisdiction over her claim for relief under sec. 6015(f) for each of the taxable years 1990 and 1991, the Court would have found that she jointly filed a tax return with Mr. Collier for each of those years. Proceeding upon that erroneous assumption, Ms. Collier presents her position as to whether she is entitled for all of the taxable years at issue, including 1990 and 1991, to relief under sec. 6015(f) pursuant to the procedures set forth in Revenue Procedure 2000-15 by contending, in the alternative, that she jointly filed tax returns with Mr. Collier for 1990 and 1991 and therefore satisfies the threshold condition set forth in sec. 4.01(1) of Revenue Procedure 2000-15 for all of the taxable years at issue. We have held that the joint filing of a tax return is not a prerequisite to our jurisdiction under sec. 6015(e)(1). Consequently, in determining whether we have jurisdiction over the taxable years 1990 and 1991, we did not address Ms. Collier's contention that she did not jointly file returns with Mr. Collier for those two years. We shall now address that contention in the context of determining whether Ms. Collier satisfies the threshold condition set forth in sec. 4.01(1) of Revenue Procedure 2000-15 with respect to each of the taxable years 1990 and 1991. Of course, if we

(continued...)

With respect to Ms. Collier's contention that she did not jointly file a tax return with Mr. Collier for taxable year 1990 or taxable year 1991, the parties stipulated that Ms. Collier and Mr. Collier filed their tax returns for those years on April 15, 1991, and April 15, 1992, respectively. Ms. Collier argues that we should disregard that stipulation. In support of that argument, Ms. Collier asserts:

> A visual inspection of the 1990 and 1991 returns shows that petitioner did not sign the 1990 return and that the "Sandrus Collier" signature appearing on the 1991 return is different from the signature on the 1987 and 1989 returns. Both parties here must have made a mutual mistake when entering into the stipulation * * *.

We shall not disregard the parties' stipulations of fact that Ms. Collier and Mr. Collier filed their tax return for each of the taxable years 1990 and 1991 unless justice requires us to do so. Rule 91(e). We conclude that justice does not require us to disregard those stipulations.

Assuming arguendo that Ms. Collier did not sign the 1990 joint return and the 1991 joint return, on the instant record, we find that any such facts are not contrary to the parties' stipulations of fact that Ms. Collier and Mr. Collier filed their tax

---

[13](...continued)
were to find, contrary to the parties' stipulation, that Ms. Collier did not file tax returns for 1990 and 1991 jointly with Mr. Collier, Ms. Collier would not be entitled for those years to relief under sec. 6015(f). See sec. 6015; Rev. Proc. 2000-15, sec. 4.01(1), 2000-1 C.B. 447, 448.

return for each of the years 1990 and 1991.[14]  The determinative factor as to whether spouses filed a joint tax return is whether such spouses intended to file such a return.[15]  Where both spouses intend that a tax return be filed as a joint return, the absence of the signature of one spouse does not prevent their intention from being realized.  Estate of Campbell v. Commissioner, 56 T.C. 1, 12 (1971); Federbush v. Commissioner, 34 T.C. 740, 757 (1960), affd. per curiam 325 F.2d 1 (2d Cir. 1963); Heim v. Commissioner, 27 T.C. 270, 273 (1956), affd. 251 F.2d 44 (8th Cir. 1958); Howell v. Commissioner, 10 T.C. 859, 866 (1948), affd. per curiam 175 F.2d 240 (6th Cir. 1949).

We have found as a fact that Ms. Collier intended to, and did, file tax returns for 1990 and 1991 jointly with Mr. Collier.[16]  We have no valid basis for concluding that Ms. Col-

---

[14]Moreover, we find it illogical to conclude, as Ms. Collier would have us do, that, because she allegedly did not sign the 1990 joint return and the 1991 joint return, "Both parties * * * [in the instant case] must have made a mutual mistake when entering into the stipulation."

[15]Indeed, Ms. Collier admits on brief:

The presence or absence of signatures on a joint return is not dispositive to filing status, * * * and the Court can find that petitioner filed joint returns even though she did not sign the returns at issue. * * * the Court will determine the non-signing spouse's filing status by whether she intended to file a joint return. * * * [Citations omitted.]

[16]Consistent with the parties' stipulations of fact, Ms. Collier testified that she filed tax returns for the years 1987
                                        (continued...)

lier and respondent made a mutual mistake of fact in stipulating that Ms. Collier and Mr. Collier jointly filed tax returns for 1990 and 1991.

On the record before us, we find that Ms. Collier satisfies for 1990 and 1991 the threshold condition set forth in section 4.01(1) of Revenue Procedure 2000-15 (i.e., the requesting spouse

---

[16](...continued)
through 1991 jointly with Mr. Collier, although she inconsistently testified that she did not know that a joint tax return was being filed for taxable year 1991. Although Ms. Collier at first testified that she did not know that a joint tax return for 1990 was being filed, she changed her testimony to state that "I knew he [Mr. Collier] was filing jointly [for 1990], but I didn't know if he had filed". We also note that Ms. Collier filed tax returns jointly with Mr. Collier for 1987, 1988, and 1989, and she does not contend that she did not file tax returns jointly with him for taxable years 1979 through 1986 during which they were married. That customary practice of filing tax returns for years before 1990 and 1991 jointly with Mr. Collier strongly indicates that Ms. Collier and Mr. Collier intended to file jointly for 1990 and 1991. See Estate of Campbell v. Commissioner, 56 T.C. 1, 12-13 (1971); Federbush v. Commissioner, 34 T.C. 740, 757-758 (1960), affd. per curiam 325 F.2d 1 (2d Cir. 1963); cf. Helfrich v. Commissioner, 25 T.C. 404, 407-408 (1955) (where there was no history of joint filing and nonsigning spouse did not know that a joint return had been filed or prepared, the Court was unable to conclude, without more, that the inclusion of income attributable to nonsigning spouse was indicative of an intent to file a joint return). We reject Ms. Collier's claim on brief that her practice of filing tax returns jointly with Mr. Collier changed for taxable years 1990 and 1991. In this regard, we note (1) that Ms. Collier did not file separate returns for 1990 and 1991, years for which she had wage income of $32,689 and $33,000, respectively, see Howell v. Commissioner, 10 T.C. 859, 866 (1948), affd. per curiam 175 F.2d 240 (6th Cir. 1949), and (2) that the 1990 and 1991 joint returns reported Ms. Collier's respective wages for those years, and Ms. Collier's Form W-2 was attached to the 1990 joint return, see Federbush v. Commissioner, supra at 756; Heim v. Commissioner, 27 T.C. 270, 274 (1956), affd. 251 F.2d 44 (8th Cir. 1958).

- 21 -

jointly filed a tax return for the taxable year for which the requesting spouse is seeking relief under section 6015(f)).

Where, as is the case here, the requesting spouse satisfies the threshold conditions set forth in section 4.01 of Revenue Procedure 2000-15, section 4.02 of that revenue procedure sets forth the circumstances under which the Service ordinarily will grant relief to that spouse under section 6015(f) in a case like the instant case where a liability is reported in a joint return but not paid.  As pertinent here, those circumstances, which Revenue Procedure 2000-15 and we refer to as elements, are:

> (a) At the time relief is requested, the requesting spouse is no longer married to * * * the nonrequesting spouse     * * *

> (b) At the time the return was signed, the requesting spouse had no knowledge or reason to know that the tax would not be paid.  The requesting spouse must establish that it was reasonable for the request-ing spouse to believe that the nonrequesting spouse would pay the reported liability.  If a requesting spouse would otherwise qualify for relief under this section, except for the fact that the requesting spouse had no knowledge or reason to know of only a portion of the unpaid liability, then the requesting spouse may be granted relief only to the extent that the liability is attributable to such portion; and

> (c) The requesting spouse will suffer eco-nomic hardship if relief is not granted.  For purposes of this section, the determination of whether a re-questing spouse will suffer economic hardship will be made by the Commissioner or the Commissioner's dele-gate, and will be based on rules similar to those provided in § 301.6343-1(b)(4) of the Regulations on Procedure and Administration.

(We shall hereinafter refer to the elements set forth in section

4.02(1)(a), (b), and (c) of Revenue Procedure 2000-15 as the marital status element, the knowledge or reason to know element, and the economic hardship element, respectively.)

Section 4.02(2) of Revenue Procedure 2000-15 provides that relief granted under section 4.02(1) of that revenue procedure is subject to the following limitations:

(a) If the return is or has been adjusted to reflect an understatement of tax, relief will be available only to the extent of the liability shown on the return prior to any such adjustment; and

(b) Relief will only be available to the extent that the unpaid liability is allocable to the nonrequesting spouse.

Turning to the three elements set forth in section 4.02(1) of Revenue Procedure 2000-15, the presence of which will ordinarily result in a grant of relief under section 6015(f), respondent concedes that with respect to each of the years at issue the marital status element is present in the instant case.

With respect to the knowledge or reason to know element set forth in section 4.02(1)(b) of Revenue Procedure 2000-15, Ms. Collier contends that that element is present here. In order for the knowledge or reason to know element to be present in the instant case, Ms. Collier must establish (1) that at the time the joint return for each of the years at issue was signed she had no knowledge or reason to know that the tax reported in each of those returns would not be paid and (2) that it was reasonable for her to believe that Mr. Collier would pay the reported tax

for each such year.

In support of her position that the knowledge or reason to know element is present in the instant case, Ms. Collier contends on brief that Mr. Collier handled, and prevented her from partic- ipating in, their financial and tax matters and never informed her of any unpaid taxes.  In an attempt to establish those contentions as facts, Ms. Collier relies on brief on her own testimony and the unsworn statement of Christine Stotts (Ms. Stotts) (Ms. Stotts' statement), which the parties stipulated "states her [Ms. Stotts'] personal knowledge of the relationship between petitioner [Ms. Collier] and her ex-husband [Mr. Col- lier]."[17]

---

[17]Ms. Collier relies on the following portion of Ms. Stotts' statement:

> After Sandrus and her former husband Clai, moved to northern Virginia, there were many occasions, Sandrus and her son would come stay with me for a couple of days, and other times I would have to loan her money.  Clai did not always give her enough money to cover their bills.  On one occasion while visiting her, Clai came in and started an argument about their finances. He was especially upset on receiving a certi- fied letter from the IRS.  He blamed her because he was late with their taxes.  Sandrus told him she had never been involved with the filing of their taxes before so why was he so upset now.  When she asked to be a part of his decision making he told her she was too stupid to understand and he was not about to begin teaching her now.  Their argument was a little too nerve rat- tling for me so I left.  However, two or three hours later, she called to ask could she stay with me for a while.  Sandrus was afraid of Clai, but stayed in the marriage as long as she did for their son.

We do not find that the testimony on which Ms. Collier relies establishes her contentions that Mr. Collier handled, and prevented her from participating in, their financial and tax matters and never informed her of any unpaid taxes.  Moreover, we found Ms. Collier's testimony to be self-serving, conclusory, vague, inconsistent, and/or questionable in certain material respects, and we shall not rely on it to establish her position in this case.  Nor do we find that Ms. Stotts' statement establishes as facts that Mr. Collier handled, and prevented Ms. Collier from participating in, their financial and tax matters and never informed her of any unpaid taxes.[18]

We have found that (1) Ms. Collier and Mr. Collier jointly filed a tax return for each of the years 1987 through 1991; (2) at all relevant times Ms. Collier and Mr. Collier kept information relating to their financial and tax matters in one place and had access to that information; (3) at times throughout 1987-1991 Ms. Collier and Mr. Collier discussed their financial and tax matters; (4) at all relevant times Ms. Collier was

---

[18]Ms. Stotts' statement establishes that at an undisclosed time Mr. Collier informed Ms. Collier that they were having problems with the Service and that Ms. Collier was involved with financial matters of Ms. Collier and Mr. Collier at least in that Ms. Collier was responsible for paying at least certain of their bills, although she did not always have enough money to pay those bills.  The assertion in Ms. Stotts' statement that "Sandrus [Ms. Collier] told him [Mr. Collier] she had never been involved with the filing of their taxes before so why was he so upset now" is nothing but a recitation of what Ms. Collier stated at an undisclosed time to Mr. Collier in the presence of Ms. Stotts.

responsible for paying at least some of the bills of Mr. Collier and herself, although she did not always have enough money to pay those bills; (5) during periods throughout 1987-1991 Ms. Collier and Mr. Collier maintained a joint checking account; (6) at all relevant times Ms. Collier knew that at least during and before 1987 Mr. Collier had a support obligation with respect to a child of his that was not Ms. Collier's child, and during a period which included at least certain years prior to 1988 Mr. Collier was in arrears with respect to that support obligation; (7) sometime after June 12, 1989, and before October 1991, respondent placed a lien on a joint bank account of Ms. Collier and Mr. Collier with respect to the unpaid assessment for their taxable year 1987, and Ms. Collier knew about that lien; (8) Ms. Collier and Mr. Collier did not pay any tax at the respective times they filed the joint returns for the taxable years 1987 through 1991; (9) at the time Ms. Collier and Mr. Collier filed the 1987 joint return Ms. Collier did not believe that payment was made of the $3,926 of tax due shown in that return; (10) at the time Ms. Collier and Mr. Collier filed the 1989 joint return Ms. Collier did not believe that payment was made of the $5,554 of tax due shown in that return; and (11) at the time Ms. Collier and Mr. Collier filed the 1991 joint return Ms. Collier did not believe that payment was made of the $8,528 of tax due shown in that return.

On the record before us, we find that Ms. Collier has failed to carry her burden of establishing that with respect to each of the years at issue the knowledge or reason to know element set forth in section 4.02(1)(b) of Revenue Procedure 2000-15 is present here.

With respect to the economic hardship element set forth in section 4.02(1)(c) of Revenue Procedure 2000-15, Ms. Collier contends that that element is present here. According to Ms. Collier, if she were to pay the unpaid assessment for each of the years at issue, she would suffer economic hardship. That is because she claims that she has significant financial obligations consisting of paying for her adult son's college education, her own postgraduate work, and the care of her mother.[19]

In determining whether a requesting spouse will suffer economic hardship, section 4.02(1)(c) of Revenue Procedure 2000-15 requires reliance on rules similar to those provided in section 301.6343-1(b)(4), Proced. & Admin. Regs. Section 301.6343-1(b)(4)(i), Proced. & Admin. Regs., generally provides that an individual suffers an economic hardship if the individual is unable to pay his or her reasonable basic living expenses. Section 301.6343-1(b)(4), Proced. & Admin. Regs., provides:

> (ii) <u>Information from taxpayer</u>. In determining a
> reasonable amount for basic living expenses the direc-

___

[19]Ms. Collier also points out that she is not receiving spousal support or alimony from Mr. Collier.

tor will consider any information provided by the taxpayer including--

(A) The taxpayer's age, employment status and history, ability to earn, number of dependents, and status as a dependent of someone else;

(B) The amount reasonably necessary for food, clothing, housing (including utilities, home-owner insurance, home-owner dues, and the like), medical expenses (including health insurance), transportation, current tax payments (including federal, state, and local), alimony, child support, or other court-ordered payments, and expenses necessary to the taxpayer's production of income (such as dues for a trade union or professional organization, or child care payments which allow the taxpayer to be gainfully employed);

(C) The cost of living in the geographic area in which the taxpayer resides;

(D) The amount of property exempt from levy which is available to pay the taxpayer's expenses;

(E) Any extraordinary circumstances such as special education expenses, a medical catastrophe, or natural disaster; and

(F) Any other factor that the taxpayer claims bears on economic hardship and brings to the attention of the director. [Sec. 301.6343-1(b)(4)(ii), Proced. & Admin. Regs.]

Assuming arguendo that the expenses claimed by Ms. Collier (i.e., expenses relating to her adult son's college education, her own postgraduate work, and the care of her mother) qualify as basic living expenses within the meaning of section 301.6343-1(b)(4), Proced. & Admin. Regs.,[20] Ms. Collier presented no

_____

[20]We are persuaded on the record before us that the expenses for the care by Ms. Collier of her mother qualify as basic living expenses within the meaning of that regulation. However, as

(continued...)

evidence as to the amounts of such claimed expenses. On the instant record, we find that Ms. Collier has failed to carry her burden of showing that the amounts of such expenses, when added to the amounts of her other expenses that qualify as basic living expenses within the meaning of that regulation, are reasonable.[21]

On the record before us, we find that Ms. Collier has failed to carry her burden of establishing that respondent's determination to deny her relief, in whole or in part, for each of the years at issue will cause her to be unable to pay a reasonable amount for basic living expenses within the meaning of section 301.6343-1(b)(4), Proced. & Admin. Regs. On that record, we find that Ms. Collier has failed to carry her burden of establishing that with respect to each of the years at issue the economic hardship element set forth in section 4.02(1)(c) of Revenue Procedure 2000-15 is present in the instant case.

On the record before us, we find that Ms. Collier has failed to carry her burden of establishing that with respect to each of

---

[20](...continued)
discussed below, Ms. Collier has failed to establish the amounts that she spends for, inter alia, food, clothing, housing, and medical care for her mother.

[21]As for Ms. Collier's contention that she does not receive spousal support or alimony from Mr. Collier, the record establishes Ms. Collier's ability to earn a living. At the time of the trial in this case, Ms. Collier was earning approximately $60,000 a year. We also note that Ms. Collier appears to have a right of indemnification against Mr. Collier for the payment of certain tax liabilities under their separation agreement and judgment of divorce.

the years at issue all of the elements set forth in section 4.02(1) of Revenue Procedure 2000-15 under which the Service will ordinarily grant equitable relief under section 6015(f) are present in the instant case.

Although Ms. Collier has not shown that she qualifies for relief under section 4.02(1) of Revenue Procedure 2000-15, the Service may nonetheless grant relief to her under section 4.03 of that revenue procedure. That section provides a partial list of positive and negative factors which respondent is to take into account in considering whether respondent will grant an individual full or partial equitable relief under section 6015(f). No single factor is to be determinative in any particular case; all factors are to be considered and weighed appropriately; and the list of factors is not intended to be exhaustive. Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. 447, 448.

Turning to the partial list of positive factors set forth in section 4.03(1) of Revenue Procedure 2000-15 that weigh in favor of relief,[22] Ms. Collier contends that each of those factors is

_____

[22]As pertinent here, sec. 4.03(1) of Revenue Procedure 2000-15 provides:

    (1) <u>Factors weighing in favor of relief</u>. The factors weighing in favor of relief include, but are not limited to, the following:

       (a) <u>Marital status</u>. The requesting spouse is * * * divorced from the nonrequesting spouse.

(continued...)

present in the instant case.

The parties do not dispute that the marital status positive factor, the economic hardship positive factor, and the knowledge or reason to know positive factor set forth in section 4.03(1)(a), (b), and (d), respectively, of Revenue Procedure

---

[22](...continued)

        (b) <u>Economic hardship</u>.  The requesting spouse would suffer economic hardship (within the meaning of section 4.02(1)(c) of this revenue procedure) if relief from liability is not granted.

        (c) <u>Abuse</u>.  The requesting spouse was abused by the nonrequesting spouse, but such abuse did not amount to duress.

        (d) <u>No knowledge or reason to know</u>.  In the case of a liability that was properly reported but not paid, the requesting spouse did not know and had no reason to know that the liability would not be paid.
* * *

        (e) <u>Nonrequesting spouse's legal obligation</u>. The nonrequesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the outstanding liability.  This will not be a factor weighing in favor of relief if the requesting spouse knew or had reason to know, at the time the divorce decree or agreement was entered into, that the nonrequesting spouse would not pay the liability.

        (f) <u>Attributable to nonrequesting spouse</u>. The liability for which relief is sought is solely attributable to the nonrequesting spouse.

(We shall hereinafter refer to the positive factors set forth in sec. 4.03(1)(a), (b), (c), (d), (e), and (f) of Revenue Procedure 2000-15 as the marital status positive factor, the economic hardship positive factor, the abuse positive factor, the knowledge or reason to know positive factor, the legal obligation positive factor, and the attribution positive factor, respectively.)

2000-15 are the same as the marital status element, the economic hardship element, and the knowledge or reason to know element set forth in section 4.02(1)(a), (c), and (b), respectively, of that revenue procedure.

With respect to the marital status positive factor set forth in section 4.03(1)(a) of Revenue Procedure 2000-15, respondent concedes that with respect to each of the years at issue that factor is present in the instant case.

With respect to the economic hardship positive factor and the knowledge or reason to know positive factor set forth in section 4.03(1)(b) and (d), respectively, of Revenue Procedure 2000-15, we have found that Ms. Collier has failed to carry her burden of showing that with respect to each of the years at issue the economic hardship element and the knowledge or reason to know element set forth in section 4.02(1)(c) and (b), respectively, of Revenue Procedure 2000-15 are present in the instant case. On the instant record, we further find that Ms. Collier has failed to carry her burden of establishing that with respect to each of the years at issue the economic hardship positive factor and the knowledge or reason to know positive factor set forth in section 4.03(1)(b) and (d), respectively, of that revenue procedure are present in the instant case.

With respect to the abuse positive factor set forth in section 4.03(1)(c) of Revenue Procedure 2000-15, Ms. Collier

maintains that she was abused by Mr. Collier in that she suffered from constant verbal and mental abuse from Mr. Collier during her marriage to him. In support of that contention, Ms. Collier relies on Ms. Stotts' statement and the unsworn statement of a psychiatrist, Ronald J. Garson, M.D. (Dr. Garson's statement). As for Ms. Stotts' statement, Ms. Stotts provides her opinion in that statement that Mr. Collier "caused mental and verbal abuse to both Sandrus [Ms. Collier] and their son" (Ms. Stotts' opinion).[23] We are unwilling to rely on Ms. Stotts' opinion, which we find to be conclusory and lacking in any specificity as to the facts on which she bases her conclusion. As for Dr. Garson's statement, all that statement contains is the following:

> Ms. Sandrus Collier has been under my [Dr. Garson's] care for treatment of depression since January, 1993. At that time, she was dealing with the stress of separation and divorce. Subsequently, she recovered from the depression and is now much improved.

Dr. Garson's statement makes no reference to Ms. Collier's having been abused by Mr. Collier. We do not find that Dr. Garson's statement establishes that Mr. Collier abused Ms. Collier during

---

[23]According to Ms. Stotts' statement,

While Sandrus [Ms. Collier] and Clai [Mr. Collier] were married and even after their separation, Clai caused mental and verbal abuse to both Sandrus and their son, Rusty (Clai V). Sandrus began therapy soon after separating from Clai. She had become a co-dependent of Clai's behavior and actions. He had so much control over her that it was very hard for her to "break away".
* * *

their marriage.  On the record before us, we find that Ms. Collier has failed to carry her burden of showing that with respect to each of the years at issue the abuse positive factor set forth in section 4.03(1)(c) of Revenue Procedure 2000-15 is present in the instant case.

With respect to the legal obligation positive factor set forth in section 4.03(1)(e) of Revenue Procedure 2000-15, respondent concedes that with respect to each of the years at issue that factor is present in the instant case.

With respect to the attribution positive factor set forth in section 4.03(1)(f) of Revenue Procedure 2000-15, Ms. Collier maintains on brief that the unpaid assessment for each of the years at issue is solely attributable to Mr. Collier because he "was claiming approximately 10-12 allowances, which resulted in significant underpayments of tax."  In support of her position on brief, Ms. Collier relies on the following testimony that she gave on cross-examination:  "I found out later that he had like ten to 12 [sic] deductions.  After our separation, in going through records I found this information."  We believe that the foregoing testimony of Ms. Collier pertains only to the taxable year 1989.[24]  Even if Ms. Collier had intended her testimony

_____

[24]In this connection, Ms. Collier's testimony that she "found out later that he [Mr. Collier] had like ten to 12 [sic] deductions" was elicited by respondent on cross-examination after the following cross-examination with respect to taxable year

(continued...)

regarding the "ten to 12 [sic] deductions" that she claims Mr. Collier was taking pertained to 1989 as well as to other years, it is not clear to which other years her testimony relates. Moreover, Ms. Collier's testimony regarding Mr. Collier's withholding is uncorroborated and conclusory, and we are unwilling to rely on it to establish her contention that for each of the taxable years at issue Mr. Collier "was claiming approximately 10-12 allowances, which resulted in significant underpayments of

---

[24](...continued)
1989:

    Q    However, when you compare the wages you
earned to the withholding amounts percentage wise did
you realize that for the 1989 year you had 30 percent
of withholdings?

    A    I didn't understand tax situations, so I
didn't know that I did not have enough taken out.  I
thought I had did what was correct until after filing
and seeing these papers.  Then I realized that it
wasn't enough taken out.

    Q    Did you take out enough for one person?

    A    I thought I was doing enough for myself, not
doing it as a couple, because he was taking out his
own, and I was taking out mine.

    Q    And about how many were you taking out at the
time?

    A    Just for myself.  He was doing our son.  He
was adding--I found out later he had like ten to 12
deductions.  After our separation, in going through
records I found this information.  [Reproduced liter-
ally.]

tax."[25]

The record establishes the amount of tax withheld from the respective wages of Ms. Collier and Mr. Collier for only two of the taxable years at issue, i.e., 1989 and 1990. The record does not establish the tax withheld from either Ms. Collier's wages or Mr. Collier's wages for taxable years 1988 and 1991.[26] On the instant record, we find that Ms. Collier has failed to carry her burden of showing that the unpaid liability for each of the years at issue is solely attributable to Mr. Collier's allegedly having claimed an excessive number of withholding allowances.

On the record before us, we find that Ms. Collier has failed to carry her burden of establishing that with respect to each of the years at issue the attribution positive factor set forth in section 4.03(1)(f) of Revenue Procedure 2000-15 is present in the instant case.

Turning to the negative factors set forth in section 4.03(2) of Revenue Procedure 2000-15 that weigh against relief,[27] Ms.

---

[25]Assuming arguendo that Mr. Collier had claimed 10 to 12 withholding allowances for each of the taxable years at issue, the record does not disclose whether or not Mr. Collier would have had a valid reason for claiming such number of allowances.

[26]For taxable years 1988 and 1991, the record establishes only the total tax withheld from the wages of Ms. Collier and Mr. Collier.

[27]As pertinent here, sec. 4.03(2) of Revenue Procedure 2000-15 provides:

(continued...)

Collier contends that none of those factors is present in the instant case.

The parties agree or do not dispute that the knowledge or

---

[27](...continued)
(2) Factors weighing against relief. The factors weighing against relief include, but are not limited to, the following:

(a) Attributable to the requesting spouse. The unpaid liability * * * is attributable to the requesting spouse.

(b) Knowledge, or reason to know. A requesting spouse knew or had reason to know * * * that the reported liability would be unpaid at the time the return was signed. This is an extremely strong factor weighing against relief. * * *

(c) Significant benefit. The requesting spouse has significantly benefitted (beyond normal support) from the unpaid liability * * *.

(d) Lack of economic hardship. The requesting spouse will not experience economic hardship (within the meaning of section 4.02(1)(c) of this revenue procedure) if relief from the liability is not granted.

(e) Noncompliance with federal income tax laws. The requesting spouse has not made a good faith effort to comply with federal income tax laws in the tax years following the tax year or years to which the request for relief relates.

(f) Requesting spouse's legal obligation. The requesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the liability.

(We shall hereinafter refer to the negative factors set forth in sec. 4.03(2)(a), (b), (c), (d), (e), and (f) of Revenue Procedure 2000-15 as the attribution negative factor, the knowledge or reason to know negative factor, the significant benefit negative factor, the economic hardship negative factor, the noncompliance negative factor, and the legal obligation negative factor, respectively.)

reason to know negative factor, the economic hardship negative factor, and the legal obligation negative factor set forth in section 4.03(2)(b), (d), and (f), respectively, of Revenue Procedure 2000-15 are the opposites of the knowledge or reason to know positive factor, the economic hardship positive factor, and the legal obligation positive factor set forth in section 4.03(1)(d), (b), and (e), respectively, of that revenue procedure. The attribution negative factor set forth in section 4.03(2)(a) of Revenue Procedure 2000-15 is essentially the opposite of the attribution positive factor set forth in section 4.03(1)(f) of that revenue procedure.[28] We have found above that Ms. Collier has failed to carry her burden of establishing that with respect to each of the years at issue the economic hardship positive factor and the knowledge or reason to know positive factor set forth in section 4.03(1)(b) and (d), respectively, of Revenue Procedure 2000-15 are present in the instant case. On the instant record, we further find that petitioner has failed to carry her burden of establishing that with respect to each of the years at issue the economic hardship negative factor and the

---

[28]Although we do not believe that those two factors are exactly opposite because the attribution negative factor does not contain the word "solely" that appears in the attribution positive factor, we conclude that respondent's use of the word "solely" in describing the attribution positive factor but not in describing the attribution negative factor does not affect our findings and conclusions with respect to those factors in the instant case.

knowledge or reason to know negative factor set forth in section 4.03(2)(d) and (b), respectively, of that revenue procedure are not present in the instant case.

With respect to the attribution negative factor set forth in section 4.03(2)(a) of Revenue Procedure 2000-15, we have found above that Ms. Collier has failed to carry her burden of showing that the unpaid liability for each of the years at issue is solely attributable to Mr. Collier's allegedly having claimed an excessive number of withholding allowances.  Ms. Collier proffered no reliable evidence to show that no portion of the unpaid liability for each of the years at issue is attributable to her. On the record before us, we find that Ms. Collier has failed to carry her burden of establishing that with respect to each of the years at issue the attribution negative factor set forth in section 4.03(2)(a) of Revenue Procedure 2000-15 is not present in the instant case.

With respect to the significant benefit negative factor set forth in section 4.03(2)(c) of Revenue Procedure 2000-15, Ms. Collier contends on brief that she did not significantly benefit from the unpaid assessment for each of the years at issue because, inter alia:

> [Mr. Collier] failed to support petitioner and their son adequately, resulting in her having to borrow money from friends on occasion.  Moreover, there were times that petitioner could not even pay the household bills at times due to her husband's controlling of the family's money.  [Internal references omitted.]

In support of her contention that she did not significantly benefit from the unpaid assessment for each of the years at issue, Ms. Collier relies on brief on Ms. Stotts' statement quoted supra note 17, in which Ms. Stotts states, inter alia, that she lent Ms. Collier undisclosed amounts of money and that "[Mr. Collier] did not always give her [Ms. Collier] enough money to cover their bills" that Ms. Collier was responsible for paying.  We are unwilling to rely on the foregoing vague state-ments of Ms. Stotts to establish that Ms. Collier did not signif-icantly benefit within the meaning of section 4.03(2)(c) of Revenue Procedure 2000-15 from the unpaid assessment for each of the years at issue.  We have rejected above Ms. Collier's conten-tion that Mr. Collier handled, and prevented her from participat-ing in, their financial and tax matters.  We have found above that (1) at all relevant times Ms. Collier was responsible for paying at least some of the bills of Mr. Collier and herself, although she did not always have enough money to pay those bills and that (2) during periods throughout 1987-1991 Ms. Collier and Mr. Collier maintained a joint checking account.  We find on the instant record that the facts that Ms. Stotts lent Ms. Collier undisclosed amounts of money and that Ms. Collier did not always have enough money to pay the bills that she was responsible for paying are not determinative of whether Ms. Collier significantly benefited from the unpaid assessment for each of the years at

issue.  On the record before us, we find that Ms. Collier has failed to carry her burden of establishing that with respect to each of the years at issue the significant benefit negative factor set forth in section 4.03(2)(c) of Revenue Procedure 2000-15 is not present in the instant case.

With respect to the noncompliance negative factor set forth in section 4.03(2)(e) of Revenue Procedure 2000-15, Ms. Collier makes no argument addressing that factor.[29]  On the record before us, we find that Ms. Collier has failed to carry her burden of establishing that with respect to each of the years at issue the noncompliance negative factor is not present in the instant case.

With respect to the legal obligation negative factor set forth in section 4.03(2)(f) of Revenue Procedure 2000-15, respondent concedes that Mr. Collier has a legal obligation pursuant to a divorce decree or agreement to pay the outstanding liability for each of the years at issue.  Consequently, respondent concedes that with respect to each of the years at issue the legal obligation negative factor set forth in section 4.03(2)(f) of Revenue Procedure 2000-15 is not present in the instant case.

---

[29]Although Ms. Collier makes no argument with respect to the noncompliance negative factor set forth in sec. 4.03(2)(e) of Revenue Procedure 2000-15, the record establishes that respondent applied certain of Ms. Collier's overpayments of tax for taxable year 1995 and thereafter against the unpaid assessment for taxable years 1987 and 1988.  The record contains no evidence with respect to the taxable years 1992 through 1994, although it does establish that after June 22, 1992, Ms. Collier ceased making installment payments under the 1991 installment agreement.

On the record before us, we find that Ms. Collier has failed to carry her burden of establishing any other factors with respect to any of the years at issue that weigh in favor of granting relief under section 6015(f) and that are not set forth in sections 4.02(1) and 4.03(1) of Revenue Procedure 2000-15.

Based upon our examination of the entire record before us, we find that Ms. Collier has failed to carry her burden of showing that respondent abused respondent's discretion in denying her relief under section 6015(f) with respect to the unpaid assessment for each of the years at issue.

We have considered all of the contentions and arguments of Ms. Collier that are not discussed herein, and we find them to be without merit and/or irrelevant.

To reflect the foregoing and the concession of Ms. Collier as to taxable year 1987,

<u>Decision will be entered</u>

<u>for respondent</u>.